Minshall, C. J.
If the ordinance of the city adopted January 24,1884, fixing the price at which the company should furnish gas to the city, as well as to its private consumers, is a valid one, then it is clear that the company was not entitled to the relief prayed for, and its petition should have been dismissed. The claim, that its right to charge such rates as it deems proper, cannot be questioned, except by a proceeding in quo warranto, is not tenable. It is open, at all times, to the person against whom a corporation may claim the right to exercise a power, to call the power in question, and to require the company to show the existence of the power, by deriving it either fiom the plain terms of its charter or the statute under which it is organized. Such a determination is an adjudication upon the question as between the parties to the suit, but does not operate as a judgment of ouster. It may still claim and exercise the right as to other persons, as if such judgment had never been rendered. Not so as to a judgment of ouster in quo warranto. In such case, the proceeding being at the suit of the state, the judgment is available to all persons as an adjudication upon the question. It would be somewhat remarkable, if, where a corporation resorts to a court of equity for relief *30 by injunction, its right to such relief could not be questioned; yet such would be the case here, if the right of the company to fix its own rates for furnishing gas could not be questioned; and the claim that it has the right to refuse to furnish gas and to prevent the city from using it, until the city enters into a contract with it, is only another form of asserting the claim; for no contract can be made until it agrees to the price.
The principle is now well established, that “where the owner of property devotes it to a use in which the public have an iuterest, he in effect grants to the public an interest in such use, and must, to the extent of that interest, submit to be controlled by the public, for the common good, as long as he maintains the use.” This was the point of the decision in Munn v. Illinois, 94 U. S. 113; and was applied to the case of natural persons engaged in the business of warehousing and handling grain at the city of Chicago, who had been indicted and found guilty of violating an act of the legislature of the state of Illinois, regulating public warehouses and fixing the maximum charges for storage and handling grain in warehouses of the class to which that of the defendants, Munn & Scott, belonged. The principle of this decision was adopted and applied by this court in State ex rel. v. Gas Co., 34 Ohio St. 572, 582, where White, J., says, it “applies with greater force to corporations when they are invested with franchises to be exercised to subserve the public interest. Deriving their powers by grant directly from the public, they are clearly subject to public control, in respect to the terms upon which their franchises are to be exercised, unless they are protected by their charters from such interference.”
We will next inquire whether such protection can be claimed in this case. The company was incorporated by an act of the legislature, March 12, 1849, with the power “ to manufacture and sell gas to be used for the purpose of lighting the town of Zanesville and the streets thereof, and any buildings, manufactories, etc., therein contained.” This was before the adoption of our present constitution, and the charter contains no reservation of the right to alter or amend it, and is silent as to the rates at which it may be required to *31 furnish gas to the city or private consumers. Such silence cannot, however, be construed into a grant of the franchise to fix its own rates. A franchise must be created by express terms and cannot be inferred from the mere silence of the charter. So that, whilst, in this case, the company may claim to possess the rights of a natural person, it cannot claim to be clothed with any greater rights than such person would have under the same circumstances; and, having devoted its property to a public use, and thereby granted the public an interest therein, it must, within the principle in the Munn case, submit to public control, -so long as it continues to enjoy the privileges granted by its charter.
Nor can it found any right to fix its own rates upon the ordinance by which it was granted the right to use the streets of the town for the purpose of conducting gas to its consumers by laying pipes therein. The language is, the “ Company shall during such time as they enjoy the privilege granted by this ordinance, supply the town council with such quantities of gas as may by them be required for public lamps at a price not exceeding $2.50 per thousand cubic feet of gas, or fifteen dollars per annum per burner.....at the option of the town council.” The town had then no legislative authority, as the city has now under § 2478, Rev. Stats., to regulate the price of gas. It had, however, the right, in granting the company the use of its streets, to fix a maximum at which gas should be furnished it during the continuance of the privilege ; and this it did by the above provision. It did not tie up the hands of the legislature to confer such power on the town council when, in its opinion, the exercise of the power became necessary for the public good. Nor did it place the company in a more favorable position than if the provision had been entirely omitted. In such case it could have fixed its own rates as it saw fit, until the legislature intervened and conferred the power on the council to regulate the price of gas. The fact that the company may have possessed such right before the legislature intervened, does not affect the question. “ It matters not in this case,” said Chief Justice Waite in Munn v. Illinois, “ that these plaintiffs in error had *32 built their warehouses and established their business before the regulations complained of were adopted. What they did was from the beginning subject to the power of the body politic to require them to conform to such regulations as might be established by the proper authorities for the common good. They entered upon their business and provided themselves with the means to carry it on subject to this condition. If they did not wish to submit themselves to such interference, they should not have clothed the public with an interest in their concerns. The same principle applies to them that does to the proprietor of a hackney-carriage, and as to him it has never been supposed that he was exempt from regulating statutes or ordinances because he had purchased his horses and carriages, and established his business before the statutes or ordinances were adopted.” 94 U. S. 133.
The application of these observations to the gas company in the case before us, are very apparent. The plaintiffs in error in that case were natural persons possessed of the common law right to fix their own charges for handling grain, until the legislature of Illinois passed the act regulating the same. The ground of the decision sustaining the validity of the act is, that they had devoted their property to a public use and enjoyed a virtual monopoly of the business at that point. The principle of the decision applies with much greater force to an incorporated company, enjoying a similar monopoly. And because, prior to any legislation on the subject, it may have possessed the common law right of fixing its own prices, does not place it beyond the reach of any legislative control on the subject, whenever, in the interest of the public good, it becomes necessary that such control should be had. We may, in this connection, be pardoned in quoting further from the able opinion of the late Chief Justice of the United States in the Munn case: “ A person has no property, no vested interest, in any rule of the common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property that have been created by the common law cannot be taken away without due process; but the law itself, as a *33 rule of conduct, may be changed at the will, or even at the whim, of the legislature, unless prevented by constitutional limitation. Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances. To limit the rate of charge for services rendered in a public employment, or for the use of-property in which the public have an interest, is only changing a regulation which existed before. It establishes no new principle in the law, but only gives a new effect to an old one.”
It is also argued that a gas company does not come within the reason of the principle upon which these cases have been decided: That it does not devote the use of its property to the public; that it simply manufactures gas at its works, and then sells it to the consumers, as does the manufacturer of any other article; and that the public have no use of its property as in the case of warehousemen. Whatever there is of this distinction, it is not sufficient to constitute a difference; and does not satisfy the whole reason of the principle upon which the government interferes to regulate prices. It is true the public has not the use of the property of a gas -company as it has of a ferry, nor, probably, as it has of a warehouse, yet a gas compan}'- controls and supplies a public want in a position that gives it, or may do so, a virtual monopoly of the supply; and so far as the public is concerned, it is immaterial whether the manner in which the Avant is supplied, is termed a letting or a sale of property or services. It is the virtual monopoly of the supply of the want that gives to the public the right to regulate the price demanded for it. Alnutt v. Inglis, 12 East 527.
As, therefore, the city council had the right to adopt the ordinance of March 12, 1884, fixing the price of gas, and as it was the duty of the company to supply the city at these rates, so long as it continued to manufacture gas, and avail itself-of the franchises with which it had been clothed by its charter and the ordinance of the city, it had no right to an injunction restraining the city from consuming the gas at its posts and lamps as it had been in the habit of doing *34 for many years, and the court erred in granting an injunction.
Nor does the fact that the temporary injunction was subsequently modified by the court on motion of the city, and, that the injunction so modified, was subsequently made perpetual, affect the right of the city to have it reversed. The city had been wrongfully restrained from all use of the company’s gas, and was at night shrouded in darkness. The best it could do under the circumstances, without committing a contempt, was to obtain a modification of the order, whereby it was permitted to use the gas by paying the rate fixed by the company. We are unable to see how this can be said to estop the city from asking a reversal of the judgment. It simply established a modus vivendi between the parties during the litigation, and cannot be held to have affected the legal or equitable rights of the parties upon the merits of the case, in any way whatever.
The right of the company to superintend and control its connections with the pipes of the city and the burners on tbe posts of the city, must be admitted, subject to the duty of so exercising this right as not to impair the right of the city to be supplied with gas according to the terms of the ordinance of 1884. No question has been made as to the size of the burners to be employed under the ordinance. To avoid, however, any future trouble in this regard, it is proper to say, that the plain construction of the ordinance requires the use of burners of the size in use at the passage of the ordinance.
The judgment is reversed, injunction dissolved, and the petition of the plaintiff below dismissed.